**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
District Judge S. Kato Crews

Civil Action No. 1:23-cv-02930-SKC-STV

ADRIAN CONEJO, and
ERICK ONTIVEROS MOLINA, *et al.*,
*individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

SELLAN STRUCTURAL ERECTORS, LLC, *et al.*,
*an Ohio Corporation*,

Defendants.

---

ORDER

---

Plaintiffs Adrian Conejo and Erick Ontiveros Molina previously worked for Defendants Sellan Structural Erectors, LLC, Sellan Steel LLC, and Giorgio Sellan, as installers and welders. Dkt. 25, ¶26,37. According to the allegations, Plaintiffs regularly worked more than 40 hours in a work week, which their supervisors recorded into a logbook. *Id.* ¶¶29-32, 41-42. Despite this, Defendants never properly paid Plaintiffs overtime wages. *Id.* ¶¶33-35, 43. Plaintiff Conejo also maintains that when he complained about the underpayment his supervisor told him the company did not pay overtime wages. *Id.* ¶35. Based on these allegations, Plaintiffs filed this case as a purported collective and class action. *Id.*

On March 20, 2025, this Court granted Plaintiffs' Motion for Conditional Certification under the Fair Labor Standards Act and, thereafter, four additional Plaintiffs filed Notices of Consent to join this litigation. Dkts. 43-47. Plaintiffs now seek to certify a class based on their claims under the Colorado Wage Claim Act (CWCA) and Colorado Minimum Wage Act (CMWA). Dkt. 51. Specifically, Plaintiffs move to certify the following class of individuals:

> All non-management individuals who have worked for Sellan Steel between the date six years before the filing of the Complaint (i.e., November 3, 2017), and the date of the Court's Order on this motion.

Dkt. 51, p.6.

Defendants oppose the Motion and argue both that the Court should decline supplemental jurisdiction over the state law class action claims and that Plaintiffs have failed to demonstrate commonality, typicality, and predominance. Dkt. 86, pp.5-13. The Court has considered the Motion and its briefing, the entire record in this case, and the governing law. No hearing is necessary. For the following reasons, Plaintiffs' Motion is DENIED.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs the requirements for maintaining a class action. "The party seeking certification must demonstrate the proposed class satisfies all the requirements of Rule 23(a) and one of the three alternatives provided by Rule 23(b)." *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1173 (10th Cir. 2023) (citing Fed. R. Civ. P. 23(a)–(b)). Specifically, Rule 23(a) requires "(1)

numerosity, meaning the class is so numerous that joinder of all members is impracticable; (2) commonality, such that there are questions of law or fact common to the class; (3) typicality, meaning the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy, such that the representative parties will fairly and adequately protect the interests of the class." *Gamboa v. KISS Nutraceuticals*, 777 F. Supp. 3d 1210, 1221 (D. Colo. 2025) (citing Fed. R. Civ. P. 23(a)) (cleaned up). Here, Plaintiffs seek certification under Rule 23(b)(3), which permits a class action where "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23 does not simply set forth a pleading standard. Rather, the proponent of certification "must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In determining whether a party has met this burden, the Court accepts the substantive allegations of the complaint as true and conducts a "rigorous" analysis of whether the prerequisites for certification are satisfied. *See Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 619 n.2 (D.N.M. 2007) ("[T]he overwhelming majority of other circuits and the Supreme Court . . . have held that a district court is not limited to the allegations raised in the complaint, and should instead make

whatever legal and factual inquiries are necessary to make an informed determination of the certification issues." (collecting cases)).

## ANALYSIS

While it is Plaintiffs' burden to demonstrate each of the Rule 23(a) and Rule 23(b)(3) requirements are met, the Court confines its analysis to commonality and preponderance.

### 1. Commonality

In their limited discussion of commonality, Plaintiffs contend the following common questions can be determined on a class-wide basis: "(1) whether Defendant has failed to properly compensate class members for overtime work performed; (2) whether Defendants tendered payment within 14 days of having received a formal Colorado wage demand; (3) whether Defendant is entitled to any defenses or affirmative defenses; and (4) what formulae and principles are appropriate for calculating damages." Dkt. 51, p.11. But this is the extent of Plaintiffs' argument. And the Court has no obligation to examine such woefully underdeveloped thoughts. *See, e.g., A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) (declining to address argument that was underdeveloped and contained "mostly general legal statements and empty platitudes"); *Tillmon v. Douglas Cty.*, 817 F. App'x 586, 589-90 (10th Cir. 2020) (declining to address argument where party's analysis was "cursory at best"). Even if Plaintiffs had engaged in an analysis, however, the Court would nevertheless conclude that they failed to meet their burden.

The element of commonality requires a plaintiff to show "there are questions of law or fact common to the class." Rule 23(a)(2). But "[t]hat language is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart Stores*, 564 U.S. at 349 (citing Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 131–132 (2009)). Plaintiffs' reliance on the foregoing recitation of questions is a prime example of this misreading, and those questions alone are insufficient to obtain class certification. *Id.*

"[T]o satisfy the commonality requirement of Rule 23(a)(2), the class's claims 'must depend upon a common contention' that 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 837 (10th Cir. 2023) (quoting *Wal-Mart Stores*, 564 U.S. at 350). "In other words, the focus of Rule 23(a)(2)'s commonality requirement is not so much on whether there exist common questions, but rather on the capacity of a class wide proceeding to generate *common answers* apt to drive the resolution of the litigation." *Gamboa*, 777 F. Supp. 3d at 1226 (quoting *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019)) (cleaned up) (emphasis added).

Although Plaintiffs' proposed class is broadly defined as Defendants' nonmanagement employees—which could include employees who *did* receive overtime wages—the Court accepts, for purposes of deciding the Motion, that each

member of the class contends they were not properly paid overtime wages. But the mere allegation that Defendants violated the CWCA and CMWA does not determine whether a class action may be maintained or a class may be certified.

To be sure, there is a conceptual gap between an individual's claim that he was denied overtime wages and the "existence of a class of persons who have suffered the same injury as the individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982). For Plaintiffs to bridge the gap in this case, they must prove more than the validity of their own wage claims. This is because evidence of Defendants' failure to pay overtime wages to the named Plaintiffs does not alone justify an inference that Defendants had a company-wide policy or practice of not paying overtime. To conclude otherwise would mean that every CWCA and CMWA case would be a potential companywide class action.

Plaintiffs attempt to bridge this gap by arguing that Defendants engaged in a common pay practice that resulted in underpayment. In support of their contention,

Plaintiffs include a chart at the end of their Motion, which allegedly shows how Defendants' underpayment scheme worked:

| Plaintiff | Start | End | Pay Date | Hours | Rate | Gross | Bates | OT Hrs | OT Half Time Rate | Unpaid OT Half Time |
|---|---|---|---|---|---|---|---|---|---|---|
| Steve Ramirez | 11/27/20 | 12/10/20 | 12/11/20 | 52.00 | $25.00 | $1,300.00 | D588 | 12 | $12.50 | $150.00 |
| | 12/4/20 | 12/17/20 | 12/18/20 | 53.00 | $25.00 | $1,325.00 | D589 | 13 | $12.50 | $162.50 |
| Conedo Butandu | 9/16/22 | 9/29/22 | 9/30/22 | 50.00 | $26.00 | $1,300.00 | D74 | 10 | $13.00 | $130.00 |
| | 9/23/22 | 10/6/22 | 10/7/22 | 66.00 | $26.00 | $1,716.00 | | 26 | $13.00 | $338.00 |
| Ontiveros Molina | 8/13/21 | 8/19/21 | 8/20/21 | 46 | $26.00 | $1,196.00 | D140 | 6 | $13.00 | $ 78.00 |
| | 8/20/21 | 8/26/21 | 8/27/21 | 59 | $26.00 | $1,534.00 | | 19 | $13.00 | $247.00 |
| Milton Aguila | 5/7/21 | 5/20/21 | 5/21/21 | 54.00 | $26.00 | $1,404.00 | D535 | 14 | $13.00 | $182.00 |
| | 5/14/21 | 5/27/21 | 5/28/21 | 48.00 | $26.00 | $1,248.00 | D536 | 8 | $13.00 | $104.00 |
| Juan C Ortega | 9/17/21 | 9/30/21 | 10/1/21 | 42.00 | $25.00 | $1,050.00 | D579 | 2 | $12.50 | $ 25.00 |
| | 9/24/21 | 10/7/21 | 10/8/21 | 37.00 | $25.00 | $ 925.00 | D580 | 0 | $12.50 | $ - |
| Cano Argueta | 3/3/23 | 3/16/23 | 3/17/23 | 59.00 | $24.00 | $1,416.00 | D53 | 19 | $12.00 | $228.00 |
| | 3/10/23 | 3/23/23 | 3/24/23 | 50.00 | $24.00 | $1,200.00 | | 10 | $12.00 | $120.00 |

Dkt. 51, p.17.

According to Plaintiffs, Defendants paid their non-management workers once a week, but every paycheck purported to cover a two-week period—presumably to spread overtime hours across a two-week period and thereby avoid overtime obligations (Underpayment Scheme). *Id.* pp.7-8. For example, according to the chart, Defendant paid Plaintiff Steve Ramirez on December 11, 2020, for the two-week period of November 27, 2020, to December 10, 2020. *Id.* p.17. But one week later, on December 18, 2020, Defendant purported to pay Plaintiff Ramirez for an overlapping two-week period of December 4, 2020, to December 17, 2020. *Id.* Based on this example, the Court agrees that the existence of such a scheme could be a common contention capable of class-wide resolution. But the evidence Plaintiffs submit in support of this theory does not support the theory.

Before addressing the evidence, the Court notes that even Plaintiffs' chart fails to support the existence of Defendants' Underpayment Scheme. While the entries for five out of the six listed Plaintiffs show weekly payments for two-week periods, the chart entries for Plaintiff Erik Ontiveros Molina show weekly payments for one week's worth of work. *Id.* p.17. And regarding Plaintiffs' supporting records, the Court has reviewed the attached pay stubs and observes that only the pay stubs for Plaintiff Gerardo G. Cano Argueta—who decided to dismiss his claims and is no longer a party to this case—conform with Plaintiffs' theory of underpayment. Dkt. 51-4, pp.1, 10. Instead, all other attached paystubs appear to have been issued on a weekly basis and cover a one-week pay period. *Id.* pp.2-9. As a case in point, Plaintiffs' chart states Plaintiff Adrian Conedo Butandu was paid according to the Underpayment Scheme. But the attached records show Plaintiff Condedo Butandu was paid on September 30, 2022, for work performed between September 23, 2022, and September 29, 2022. *Id.* p.4. He was then paid the following week, October 7, 2022, for work performed between September 30, 2022, and October 6, 2022. *Id.* In other words, the manner in which Condedo Butandu was paid is inconsistent with the Underpayment Scheme Plaintiffs contend was in play.

Finally, the Court notes there is no information regarding Plaintiff Adrian Conejo—one of the original named Plaintiffs—in the chart or the attached documents. To be sure, the Court notes the fact that according to the allegations in the Amended Complaint, Plaintiff Conejo was paid on a weekly basis but was told by a supervisor

that Defendants simply did not pay overtime. Dkt. 25, ¶¶33, 35. In their present Motion, however, Plaintiffs offer no arguments or evidence—testimony, affidavits, or additional payment records—regarding the existence of a general policy against payment of overtime. Further, the limited nature of the record evidence and the temporal distance between these records similarly precludes the Court from making such an inference on its own.

Based on the above, the Court concludes Plaintiffs have failed to meet their burden of demonstrating that the adjudication of their CWCA and CMWA claims involves a common question concerning Defendants' failure to pay them overtime.

**2. Preponderance**

Turning to the element of preponderance, the Court notes first that Plaintiffs' arguments in this regard are again woefully underdeveloped. Dkt. 51, pp.12-13. Plaintiffs' argument is largely a recitation of the legal standards applicable to the question of predominance and little else. *Id.* Plaintiffs appear to contend that because they satisfied the requirement of commonality—which the Court found otherwise—they therefore satisfy predominance. *Id.* This is incorrect. While the predominance question is related to commonality, it is a separate and more demanding requirement. *Naylor Farms, Inc.*, 923 F.3d at 789 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

"To satisfy Rule 23(b)(3), a plaintiff must show that common questions subject to generalized, classwide proof *predominate* over individual questions." *Id.* (citing

*CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (emphasis in original). A question is "individual" when members of the proposed class will need to present evidence that varies member to member. By contrast, "common" questions are those where the same evidence will suffice for each member to resolve an issue or establish a prima facie case. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citing 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-197 (5th ed. 2012)). It is not necessary for all elements of a claim to entail questions of law or fact common to the class, "so long as at least one common issue predominates." *Gamboa*, 777 F. Supp. 3d at 1232-33. To determine whether issues in the case are common or individual, the Court first considers the underlying causes of action to determine whether any elements are amenable to common proof. *Id.* at 1233.

The three elements of the CWCA claim are that (1) Plaintiffs were employees of Defendants; (2) Defendants were employers; and (3) Defendants failed to pay Plaintiffs the proper wages for all hours they worked. *Echon v. Sackett*, 2019 WL 8275344, at *5 (D. Colo. Feb. 12, 2019). The CMWA requires that "[n]on-exempt employees must be paid time and one-half their regular rate of pay for all hours worked in excess of 40 hours per week or 12 per day." *Allsopp v. Akiyama, Inc.*, 2010 WL 1258006, at *2 (D. Colo. Mar. 26, 2010). Thus, Plaintiffs must show they worked more than 40 hours per week (or more than 12 per day) and were not compensated for those excess hours at time and a half.

For purposes of this Motion, the Parties do not dispute that Plaintiffs were employees and Defendants were their employers. Thus, the Court is left to ask whether Defendants' purported failure to pay overtime is amenable to common proof. But as discussed above, Plaintiffs did not meet their burden of establishing that the alleged Underpayment Scheme (or any other common policy of underpayment) could be *answered* on a class-wide basis. Without this, the question of liability would need to be resolved on an individual basis with different evidence supporting each class member's claim to unpaid overtime. Consequently, the Court concludes that individual issues would predominate over any questions potentially common to the class.

*  *  *

For the reasons shared above, the Court finds Plaintiffs have not met their burden under Rule 23, and therefore, their Motion for Rule 23 Class Certification is DENIED.

DATED: November 3, 2026.

BY THE COURT:

S. Kato Crews
United States District Judge